*20 MR. JUSTICE GULBRANDSON,
dissenting:
I respectfully dissent.
The claimant resided in the City of Hamilton, Montana, and, during the period of his employment contract, taught fourth grade at Darby, approximately fourteen miles south of Hamilton. It is certain that if the claimant’s injury had occurred while traveling from his residence to the Darby school, he would not be eligible for workers’ compensation benefits. On the date of his injury, the claimant had left his home at Hamilton at approximately 6:00 p.m. and proceeded by highway south through Darby and towards Western Montana College at Dillon, approximately 163 miles from Hamilton.
The record is clear the contract school year had ended, and that the claimant had no further obligations to the school district, except to report for teaching duties the following September. The claimant, during previous summer sessions, had completed sufficient credits to assure his accreditation for the coming years. The record further discloses that he was an excellent teacher, related well with his students, and was respected by parents of students, fellow teachers, and school administrators. Both the principal and Superintendent testified that they encouraged the claimant to proceed with his Masters of Arts program as they both felt that he would be an excellent candidate for the position of principal, if that position were to be open and if he had completed his Master’s program. The workers’ compensation judge found that claimant was not guaranteed the position if it were available, and the testimony was that the position was not open two years after the accident, and that the last time a principal’s position had been open, more than forty applications were received.
The master contract provided that any teacher could move one space across the salary schedule by completing fifteen credits prior to the start of the next contract year and the Superintendent testified that the claimant would have had a salary increase had he completed fifteen credits during *21 the summer of 1981. I believe the majority to be in error when they state the Superintendent granted a salary increase concurrently with the approval of the claimant’s degree program. Plaintiffs deposition Exhibit No. 3 lists the fifth year program of courses developed by Western Montana College and the claimant, and was signed by the Superintendent as follows:
Program for M.A.
Okayed for salary schedule advancement
(to be completed SS/82)
LWB 9/18/80
The Superintendent’s testimony regarding that approval, when questioned by appellant’s counsel, was as follows:
“Q Now, is the course of study that he was going to pursue, is there any requirement that the School Board or trustees approve his course of study?
“A No.
“Q Just you?
“A In the case of a Master’s program, even I have very little say over it because the college sets that out.”
Upon re-direct questioning by respondent’s counsel, the Superintendent continued as follows:
“Q Now, Mr. Riley discussed with you on Claimant’s Exhibit No. 3 this ‘Program advancement.’ Those are your words that I am reading, and those are your initials under that. Can you hypothesize that you had a conversation with Mr. Courser in the fall of ‘80? This was signed by you on 9-18-80 concerning the M.A.?
“A Yes.
“Q Do you suspect that you discussed the program with him at that time?
“A Yes.
“Q Would this, in essence, be your approval of that program?
“A I would say it’s an approval of a Master’s program, and the courses listed up there are not necessarily part of that *22 program.
“Q Would you look at the courses under the ones that are part of the — Done by the printer that start at the top ‘E.D.’ to “525” down there, Philosophy of Education, School Guidance and Advanced Educational Psychology. Do you know why those courses are printed the way they are?
“A Those are part of a Master’s program in education.
“Q When you say ‘part’, what do you mean by that?
“A Well, they are — I assume that Western Montana College, if you are getting a Master’s program in education or Master’s degree, those would be some courses you would be required to take of that program.
“Q I am going to refer you now back to the Master Contract. In your opinion, under the terms of this contract, do you have to approve of a Master’s program?
“A Approve of the program, no. Be notified that you are going on the program, yes, or notify the school district that you are going on.
“Q But you don’t have to approve the program —
“A No.
“Q — in other words, do you?
“A No, the colleges have a program in the different Master’s degree areas. In other words, it would do me no good to write a program. The college may not accept it. They write the programs, and —
“Q I guess my question is: If somebody was going to take a program that you didn’t feel you needed at the school, would you give them a salary advancement for something like that?
“A I would say that if it was something way out, that I could object to a salary advancement, yes. And I don’t know if — I can think of an example. If someone was taking a Master’s program in geology and they were an art teacher, I might question that.”
In explaining his conclusions of law, the workers court judge stated:
*23 “In nearly every case discovered the following criteria were considered.
“1. Was there a benefit to be gained by the employer?
“2. Did the employer pay any of the expenses associated with the activity?
“3. Did the employer require the training and/or prescribe the method of training as a condition of employment?
“4. Did the employer encourage, offer, sponsor or acquiesce, or expect the employee’s participation in the training?
“5. Was the training activity taking place on property under the control of the employer?
“In the instant case the following factors appear;
“1. The employer stood to benefit by having a more highly trained teacher and a prospective candidate for a principal-ship. To be sure the claimant stood to gain by improving his academic record thereby increasing his salary by the terms of the contract and presumably being better qualified to seek other positions, either locally or elsewhere.
“2. The employer did not pay any of the costs associated with the training program. (Citations omitted.)
“3. The employer did not prescribe the educational program but in the testimony of the superintendent, the employer did approve the training thereby indicating to the claimant that the program was acceptable and upon completion would warrant a salary increase per the contract. This stood to benefit the employer, by allowing the employer to, at least indirectly, specify the course of study by limiting a teacher’s capacity to be eligible for the salary increase contained in the contract only if the prospective course of study would benefit the school.
“4. The employer, through its agents did encourage the claimant to attend the program. While it may be accurate to say that the encouragement was more in the nature of a friend urging one to improve his station in life, nonetheless the superintendent told claimant that he thought he would be a good candidate for the upcoming principal position and he needed training to be even eligible. Certainly *24 there was no guarantee that claimant would have gotten the position because it would be open to all applicants, the claimant nonetheless could reasonably have expected the superintendent to be a supporter of his application based on the encouragement to seek the advanced training.
“5. The training was in no way under the control of the employer. It was not on the employer’s premises, and the vehicle was not in any way related to the employer.
“It would appear unreasonable to require that all five conditions be met in order to establish compensability. Each case must rise or fall on its own set of facts.
“In the case at bar, this Court concludes that there is a sufficient nexus between the claimant’s graduate studies and his employment to warrant compensation. Simply stated the employer urged the schooling, approved the plan, and stood to benefit by having a more highly trained faculty member. Had the employer remained neutral and merely notified the claimant that the decision to seek further training was his alone to make but that without such training he could not be considered for advancement a different result might occur. Here the employer actively encouraged the graduate training and approved the courses. Under the liberal construction mandates of section 39-71-104, MCA, the claimant is entitled to benefits.” (Emphasis in original.)
I disagree with the comment No. 3 set forth above, and I do so under the commonly understood rule of law that where a case is submitted upon briefs, depositions, and exhibits only, as in the present case, this Court is in the same position as the trial judge in reviewing the facts. See McCracken v. Liquor Control Board (1943), 115 Mont. 347, 143 P.2d 891 and Morgan v. Butte Central Mining Co. (1920), 58 Mont. 633, 194 P. 496.
Regarding comment No. 3, it is my view that said comment does not fully respond to criteria question No. 3. There is no comment regarding the training being a condition of employment. The record here is clear that the claim *25 ant’s activities regarding a Master’s degree program were not a condition of employment.
I would hold that the degree of control exhibited here by approval of the education plan was illusory at best, and that the benefit to the employer was indirect and could occur only in the speculative future, and was not a part of the contract of employment and that, therefore, claimant’s injury was not compensable.
I do agree with the following comments by the workers’ compensation judge:
“The instant case presents a case of first impression in Montana. In resolving the issue this Court looks first to the statute, to Montana case law and finally to other jurisdictions for guidance.
“Clearly, the potential impact of the instant case is enormous. Many individuals, already employed, seek additional training in an effort to upgrade their skills, and to improve their employment status by becoming better trained and thereby eligible for higher paying positions. This may be particularly so in the educational field. The present case demonstrates that teachers who are educated beyond a four year bachelor degree are eligible for a higher salary. Obviously it is a personal benefit to increase one’s income. Simultaneously, it can be inferred that a teacher’s personal enhancement of skills through graduate training will be an asset to the employer by becoming a more knowledgeable educator.” (Emphasis added.)
The workers’ compensation judge clearly recognized the possible impact of his decision, after affirmance by this Court, upon every school district in Montana and upon employers in general. He did not allude to the “special errand” exception to the “going and coming” rule in his findings, conclusions, or judgment, but the majority has now expanded the exception to cover a summertime of travel activities. The claimant’s teachers at Western Montana College would not receive compensation for injuries sustained while traveling to the college, even though they were under *26 a contract of employment with the college, but the majority has now extended compensation benefits to a student, without an employment contract, traveling to that same college.
It is my view that each case cited by the majority and the workers’ compensation court judge as supporting compensability is already distinguishable from the present case either on the basis of salary payments, direct benefits to the employer, or compulsion to attend training programs as a condition of employment.
I would reverse.